## Herman Hollstrom, Appellee, v. Forest City Insurance Company, Appellant.

### Gen. No. 5608.

1. INSURANCE—*when defense of encumbrance existing prior to application unavailing.* In an action upon two insurance policies, *held,* that if prior to the second application the agent of the company had notice of an existing encumbrance upon the property covered the defense predicated upon the existence of such encumbrance was unavailing.

2. INSURANCE—*when mortgaging after issuance no defense.* If the agent of the company is notified that the insured has mortgaged the property covered and the company does not cancel the policy and return the unearned premium, a defense predicated upon such mortgaging will be deemed to have been waived.

3. INSURANCE—*when second mortgaging after issuance no defense.* If after a policy has been issued the insured mortgages the property covered and the insurance company does not elect to cancel the policy and return the unearned premium after it has received notice of such mortgaging, the giving of the second mortgage by the insured to secure the debt covered by the first mortgage, will constitute no defense to an action upon the policy.

4. INSURANCE—*when existence of mortgage at time of issuance no defense.* If after one policy has been issued the insured mortgages the property covered thereby and the company upon notice of such mortgaging does not cancel the policy and return the unearned premium the issuance by it of a second policy with knowledge of such mortgage upon the property covered by the second policy will preclude a defense predicated upon the failure of the application to recite the existing mortgage.

Assumpsit. Appeal from the Circuit Court of McHenry county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912. Rehearing denied April 18, 1912.

D. T. SMILEY, for appellant.

DAVID R. JOSLYN, for appellee; MULLEN & HOY, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee recovered a verdict and a judgment against appellant for $2,757.50 upon two policies of insurance which appellant had issued to appellee on certain horses, cattle and other chattels against loss by fire. After some special pleading it was stipulated that all pleadings necessary were to be considered as filed. Each policy was preceded by an application in which, in answer to questions, it was stated that the property was not encumbered and that appellee was the sole owner. Each policy stated that the statements in the application were made a warranty and a part of the policy and that, if any false statements were made in the application, the policy should be void, and if, without the consent of the secretary endorsed on the policy, any encumbrance has been or shall be executed on any part of the insured property, or if any change takes place in the title or interest of the assured, or if the assured should not be the sole owner of the property, the policy should be void. The application for the first policy was dated April 4, and the policy was dated April 11, 1905. On November 16, 1905, appellee gave a chattel mortgage upon a part of the property to Thomas Niles to secure the payment of a note for $950 two years after date with interest at six per cent. per annum, which mortgage was recorded November 17, 1905. The application for the second policy was dated March 27, and the second policy was dated April 2, 1906. On October 31, 1906, appellee executed another chattel mortgage to Miles securing the same note, upon two horses not named in the first mortgage, and this mortgage was recorded. The fire which occasioned the loss was on January 12, 1907. The consent of the company to these mortgages was not endorsed on the policies by the secretary of the company. Appellant contends that by reason of these facts the policies are void.

The main office of appellant is at Rockford, Illinois.

The applications for these two policies were taken by Martin Christophersen, an agent of the company for many years, who lived in Rockford and evidently was in close relations with appellant, since, in answer to appellee's letter to appellant asking for more insurance because of an increased amount of personal property, Christophersen came to appellee's premises. The agent testified that when he took the first application he read each question to appellee and wrote down appellee's answers as he gave them. Appellee testified that the agent did not ask him anything about a mortgage on the property. The first application was true, as there was at that time no mortgage. The policy stated where the personal property was located. At the time of the second application appellee had removed to another farm several miles distant from the first, and he had acquired more personal property and desired additional insurance. The agent came in answer to appellee's letter. Anderson, appellee's hired man, testified that he was present and heard the agent say to appellee that he did not see how he had improved so fast and got so much property in so short a time, and that appellee said to the agent that he did not own it all, that he had an $800 mortgage on it, or that he had about an $800 mortgage on it. Appellee testified in chief that when the agent came to his house the second time, he looked over his property and said: "Awful big stock you have got;" that appellee replied, "It is not all mine, I owe Miles about eight or nine hundred dollars on it;" that the agent replied, "That is nothing; you pay that before long." It is insisted that this is all that appellee testified that he said to the agent, but this is a mistake. Appellant's counsel understood by the expression that he used that appellee meant that there was a chattel mortgage on it, for, on cross-examination, he asked appellee, "Where did you tell him you had a chattel mortgage; where were you?" to which appellee answered, "In the house, never talk

about it before." Appellant's counsel also asked appellee this question: "Where did he say you had a nice stock, farm stock, and you said not all yours, you had a mortgage on them?" To this question appellee answered, "I said mortgage $900." Elsewhere, appellee testified that in answer to the agent's question, he answered "Not all mine; I owe Mr. Miles $800 or $900." Therefore appellee proved by two witnesses that at the time of the taking of the second mortgage he told the agent that there was a chattel mortgage on the property for $800 or $900 and he testified that he gave the name of the mortgagee. The agent testified that nothing was said to him about a mortgage on the property. He, however, admits that in taking the second application he did not put to appellee the questions in the application and record appellee's answers, but that he copied the answers from the first application, which he had before him. The agent took the first policy then and returned it to the company, in order to have entered thereon the changed location of the personal property from one farm to the other, and soon thereafter appellant returned the first policy to appellee, as well as sent him the second policy.

As there were two witnesses who testified that appellee at the time the second application was taken, did disclose to the agent the fact that he had given a chattel mortgage to Miles for $800 or $900 upon this property, and that the debt was unpaid, the jury were warranted in believing those two witnesses as against the testimony of the agent. It is therefore to be considered here that when the second application was taken the existence of the mortgage upon the property was revealed to the agent, and that the agent contrary thereto, wrote in the second application that there was no mortgage on the property, and also carried back the first policy to Rockford and caused the company to make changes therein regarding the location of the property, and thereafter it was re-delivered to appel-

lee and the second policy was delivered to him. Notice to the agent was notice to the company, and the company was therefore notified that, since the first policy was issued, a chattel mortgage had been placed upon the property which was still unpaid. The company could then have cancelled the policy and returned the unearned premium, but, as it did not do so, it waived the condition and is liable under the policy. Phenix Ins. Co. v. Grove, 215 Ill. 299. It was held in the case last cited that, although a policy requires that a waiver shall be endorsed on the policy in writing to be effective, still that condition may itself be waived. Therefore, as the company re-issued the first policy with knowledge of the first chattel mortgage and did not cancel the policy and return the unearned premium, it cannot insist that the first policy is void because of the first chattel mortgage. So too, as the fact of the first chattel mortgage was revealed to the agent when he took the application for the second policy, it cannot be avoided, because of the first chattel mortgage. Provident Life Society v. Cannon, 201 Ill. 260, and cases there cited. The law recognized in this state is thus stated in Firemen's Ins. Co. v. Horton, 170 Ill. 258:

"Where the insured in a fire insurance company makes statements to the agent of the company who solicits the insurance, of facts which might, under the terms and conditions of the policy, avoid it if omitted, and the agent does not state such facts, the insured will be as fully protected as though such facts or conditions had been noted in the application or the policy. In other words notice to an agent of an insurance company of facts which might otherwise avoid the policy will be considered as notice to the company and as having been waived by the company."

It was there held that as the agent of the insurance company was notified that there was a chattel mortgage on a part of the insured property, the insurance company could not avoid payment on account of a

similar clause in the policy to that there sued on. We are of opinion that the giving of the second chattel mortgage did not invalidate the policies for two reasons: (1) it did not increase the risk or hazard, for it was only given to secure the same debt as that secured by the first mortgage; and (2) the course pursued by the company in issuing the second policy and re-issuing the first policy after it was informed of the existence of the first chattel mortgage, and the statement by the agent to appellee, "That is nothing, you pay that before long," was calculated to lead appellee to understand that the giving of a chattel mortgage to secure his debt to Miles for a part of the stock was not considered by appellant as affecting the insurance in any way, and he might reasonably conclude from the course of conduct of appellant and its agent that there was nothing in his giving another mortgage to secure the same debt which would affect his insurance.

Appellant complains of the refusal of four instructions, requested by it. Each of these instructions required that the consent of the company to the encumbrance should be endorsed on the policy in order to prevent the policy from being invalidated by the giving of a mortgage, and it ignored the evidence that the agent was informed of the existence of the first mortgage and thereafter the second policy was made out and delivered and the first policy was re-delivered. Under the law as above stated, they were properly refused. Appellant complains of the giving of certain instructions requested by appellee. When all are considered, they are practically in harmony with the views herein expressed. One or two of them were not as specific as they might have been, but when all the given instructions are read, we do not think the jury could have misunderstood their meaning and application. We think it not necessary to extend this opinion by setting them out and discussing them in detail.

The judgment is therefore affirmed.

*Affirmed.*